**Exhibit A: Samples of Hourly Rates**

| Hourly Rate | Year | Court and Case No. | Other Information |
|---|---|---|---|
| **$425** | 2011 | *Wrobel v. Patriarch Partners Management Group, LLC* (N.D.Tex – Dallas Division) (see Exhibit A1) | Attorney "practiced in the area of civil litigation for 15 years and have tried numerous cases and prepared many, many motions." |
| **$395** | 2014 | *Nuvasive, Inc. v. Lewis* (W.D. Tex. – Austin Division) (unpublished; See Exhibit A2) | Although this affidavit is from a case in the Western District, it is an affidavit by the **defendant's counsel in this case**, who has "practiced law for approximately seventeen (17) years, and have practiced in the area of litigation for fourteen (14) years." |
| **$500** | 2010 | *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 680 (N.D. Tex. – Wichita Falls Division 2010) (pertinent pages attached as Exhibit A3) | "Based on its knowledge of the reasonable rates charged by attorneys of similar experience and ability as those here, the court finds that $500 per hour is a reasonable average rate to apply to all three lawyers." Information as to the qualifications of the three lawyers is set forth in Exhibits A4, A5 and A6. |
| **$460** | 2015 | *Hoffman v. L&M Arts* (N.D. Tex – Dallas Div. 2015) (unpublished; see Exhibit A7) | The court found a reasonable rate for Bart Wulff (an attorney with 35 years of litigation experience) in a 5-lawyer firm; see Exhibit A8) to be $460, the amount charged by that attorney at the time services were rendered, but notes that Mr. Wulff now charges **$500 - $550 per hour**. The court also calculated a lodestar amount for work performed by New York City attorneys at hourly rates ranging from $601 to $810. |

| **$495 to $650** | 2015 | *Kostic v. Texas A&M University Commerce* (N.D. Tex. – Dallas Division 2015) (unpublished; see Exhibit A9) | Hourly rates ranging from $225 - $650 per hour were approved by the Court. Brian P. Sanford (an attorney with 29 years of employment law experience – see Exhibit A10) charged $650 per hour; Robert E. McKnight (an attorney with 22 years of labor and employment law experience – See Exhibit A11) charged $495 per hour. |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ANDRZEJ WROBEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3-10CV0182-N |
| PATRIARCH PARTNERS | § | |
| MANAGEMENT GROUP, LLC and | § | |
| LYNN TILTON, | § | |
| | § | |
| Defendants. | § | |

## AFFIDAVIT OF RAUL LOYA

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| DALLAS COUNTY | § |

Before me, the undersigned authority on this day appeared Raul Loya, the Affiant, a person well known to me and after being administered an oath, by me, testified as follows.

"My name is Raul Loya. I am in no way disqualified from making this Affidavit. The facts stated herein are within my personal knowledge and are true and correct.

I am the attorney for Wrobel, Plaintiff in this matter.

I have been licensed to practice law in Texas by the Supreme Court of Texas since 1994 and I have been admitted to practice in the Northern District of Texas. I have practiced in the area of civil litigation for more than 15 years and have tried numerous cases and prepared many, many motions. I am familiar with rates for lawyers in Dallas County and my fees are on the low end of the rate scale for similarly accomplished

attorneys.

When I received Defendant's objections and responses to Plaintiff's interrogatories and production requests I read these and researched the law regarding Defendant's compliance. I then researched and drafted a motion to compel regarding this discovery. The research, drafting and preparation required 25 hours of my time. My motion to compel is a reasonable instrument for gaining Defendant's compliance with the Federal Rules and obtaining answers to Plaintiff's discovery and the time I spent on this work was reasonable and necessary. My hourly rate is $425 per hour. My fees are thus $10,625.00. These fees are reasonable and necessary in terms of the work required, the extreme novelty of the issues of fact and law, the complexity of the case, and the work that I was forced to decline in connection with researching and writing this motion.

Further Affiant sayeth not.



_____
Raul H. Loya

SWORN TO AND SUBSCRIBED before me this the 5th day of February 2011.

Seal:

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

ANNA LOYA
My Commission Expires
August 14, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

NUVASIVE, INC.

        Plaintiff,

v.

LAURA LEWIS

        Defendant.

Civil Action No. 1:12-CV-01156

## AFFIDAVIT OF BRANT C. MARTIN IN SUPPORT OF PLAINTIFF NUVASIVE, INC.'S OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS AND BRIEF IN SUPPORT THEREOF

STATE OF TEXAS          )
                               )
COUNTY OF TARRANT    )

       BEFORE ME, the undersigned authority personally appeared Brant C. Martin, known to me to be the person whose name is subscribed hereto, and who, after being first duly sworn, stated as follows:

       1.     My name is Brant C. Martin.  I am an adult and a resident of Tarrant County, Texas.  I am of sound mind, competent and authorized to make this declaration and have personal knowledge of the facts stated below.

       2.     I am a partner with the law firm of Wick Phillips Gould & Martin, LLP ("Wick Phillips") which represents plaintiff NuVasive, Inc. ("NuVasive") in this lawsuit.

       3.     I graduated from Southern Methodist University School of Law in 1997 and have been licensed to practice law in Texas since 1997.

EXHIBIT _A2_
Page _1_ of _5_

4.      I am admitted to practice before (among other federal courts) the United States District Court for the Western District of Texas, Austin Division.

5.      I have practiced law for approximately seventeen (17) years, and have practiced in the area of litigation for approximately fourteen (14) years.

6.      Attached hereto as Exhibit A-3 is a current copy of my curriculum vitae.

7.      I am lead attorney of record for NuVasive in this lawsuit.  I have represented NuVasive in this lawsuit since it was filed.

8.      Attached hereto as Exhibit A-1 is a copy of the billing records maintained by Wick Phillips for this lawsuit, which has been partially redacted to protect attorney-client communications and attorney work-product.   These records show that, in sum, the hours expended on this lawsuit by Wick Phillips' attorneys and paralegals amounts to 1821.50, which correlates to legal fees in the amount of $525,723.

9.      Specifically, (1) Wick Phillips' paralegals expended approximately 414.90 hours on this matter (2) Wick Phillips' attorneys expended approximately 1406.60 hours on this matter and (3), of this 1406.60, the three main Wick Phillips attorneys (myself, Seema Tendolkar and Jacob Fain) expended 1310 hours on this matter.

10.     Attached hereto as Exhibit A-2 is a copy of the billing records maintained by Wick Phillips for myself, Seema Tendolkar and Jacob Fain, which has also been partially redacted to protect attorney-client communications and attorney work-product, showing that the hours expended on this lawsuit by myself, Ms. Tendolkar and Mr. Fain is 1310 hours, which correlates to legal fees in the amount of $450,299.

**AFFIDAVIT OF BRANT C. MARTIN IN SUPPORT OF PLAINTIFF NUVASIVE, INC.'S OPPOSED
MOTION FOR ATTORNEYS' FEES AND COSTS AND BRIEF IN SUPPORT THEREOF – Page 2**

EXHIBIT A2
Page 2 of 5

11.    Based on the time records of Wick Phillips and my involvement in this lawsuit as its lead attorney, I confirm that the hours expended by Wick Phillips (as supported by the documents in Exhibit A-1 and Exhibit A-2) were actually expended on the topics stated.

12.    Based on my education, training and experience, and in my professional opinion, the hours expended on this action by counsel for NuVasive were reasonable. In addition, I considered the time and labor required for the tasks, the skill required to perform the legal services properly, the preclusion of other employment by the attorneys due to acceptance of this matter, the customary fees for similar work in Travis County, Texas, the amount involved and the results obtained, and the experience, reputation, and ability of the attorneys involved.

13.    The hourly rates for myself, Ms. Tendolkar and Mr. Fain in this lawsuit are respectively $395 per hour, $340 per hour and $295 per hour. Based on my education, training and experience, and in my professional opinion, these rates are in line with the market rate in the community for similar legal services by lawyers of reasonably comparable skill, experience and reputation.

14.    NuVasive has segregated its requests for reimbursement of attorneys' fees, and specifically, NuVasive is not seeking reimbursement for legal fees which are unrelated to its breach of contract claim against Lewis.

15.    NuVasive's claim for breach of contract was based on Lewis' breach of four separate provisions of the contract. Those "sub-breach" issues are so inextricably intertwined that they cannot be further segregated. For instance, work to enforce any part of the contract as to a recoverable claim would have necessarily been performed to enforce any part of the contract as to an unrecoverable claim. In addition, activities such as case management, motion(s) for protection, responding to Lewis' motion for abstention, depositions, discovery disputes, and

**AFFIDAVIT OF BRANT C. MARTIN IN SUPPORT OF PLAINTIFF NUVASIVE, INC.'S OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS AND BRIEF IN SUPPORT THEREOF** – Page 3

EXHIBIT A2

Page 3 of 5

expert discovery advanced each "sub-breach" of the contract regardless of whether attorneys' fees are recoverable for any "sub-breach."

16.     NuVasive further segregated the time it is seeking reimbursement for by eliminating time for all attorneys other than its three lead attorneys (myself, Mr. Fain and Ms. Tendolkar).   NuVasive is not seeking compensation for other attorneys who assisted with projects as needs arose, which is approximately 94 hours expended by 6 attorneys.

17.     NuVasive is not seeking compensation for paralegal time, which is approximately 414.90 hours.

18.     NuVasive additionally reduced its time by 30% to account for the fact that it may only recover for the breach of contract claim and each of its inextricably intertwined breaches.

19.     As such, in its Motion for Attorneys' Fees, NuVasive seeks fees in the amount of $315,209.30 which represents approximately 917 hours of attorney time (i.e. 70% of the 1310 hours expended by myself, Ms. Tendolkar and Mr. Fain).

20.     Wick Phillips distributed assignments so that I expended a lesser share of the hours than the combined hours of Ms. Tendolkar and Mr. Fain because I have the highest billing rate.

21.     Other than my review and revision of certain documents and briefs, all written discovery and brief writing was performed by Ms. Tendolkar and Mr. Fain.  I was most heavily involved in depositions, trial preparation and trial.

22.     This concludes my Affidavit.

*[Signatures to Follow]*

**AFFIDAVIT OF BRANT C. MARTIN IN SUPPORT OF PLAINTIFF NUVASIVE, INC.'S OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS AND BRIEF IN SUPPORT THEREOF – Page 4**

EXHIBIT A2

Page 4 of 5

Brant C. Martin

SWORN AND SUBSCRIBED to before me on July <u>29</u>, 2014.

Notary Public, State of Texas

Printed Name: _Susan A. Witt_

My commission expires: _August 26, 2014_

SUSAN A. WITT
Notary Public, State of Texas
My Commission Expires
August 26, 2014

**AFFIDAVIT OF BRANT C. MARTIN IN SUPPORT OF PLAINTIFF NUVASIVE, INC.'S OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS AND BRIEF IN SUPPORT THEREOF** – Page 5

EXHIBIT A2
Page 5 of 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

VICTORIA KLEIN, et al.,                §
                                       §
              Plaintiffs,              §
                                       §  Civil Action No. 7:03-CV-102-D
VS.                                    §  (Consolidated with
                                       §  Civil Action No. 7:09-CV-094-D)
O'NEAL, INC., d/b/a O'NEAL,            §
JONES & FELDMAN                        §
PHARMACEUTICALS, et al.,               §
                                       §
              Defendants.              §

MEMORANDUM OPINION
AND ORDER

The court must decide whether the proposed $110 million[1]
settlement of this class action alleging personal injury and death
claims arising from the manufacture, marketing, and distribution of
E-Ferol Aqueous Solution ("E-Ferol") is fair, reasonable, and
adequate, as Fed. R. Civ. P. 23(e)(2) requires, and not the product
of collusion between the parties.  Following a two-day fairness
hearing and consideration of the parties' extensive submissions,
and for the reasons that follow,[2] the court approves the settlement
and the request of the class plaintiffs' attorneys for a fee award
of 30% of the settlement amount, reimbursement of reasonable and
necessary expenses associated with the litigation, $300,000 from

---

[1]As explained *infra* at § I(C), due to insurance coverage
issues, the settlement amount ranges from a low of $90 million to
a high of $110 million, depending on the outcome of claims against
three insurance companies.

[2]The court sets out in this memorandum opinion and order its
findings of fact and conclusions of law.  *See* Rule 52(a)(1).

EXHIBIT A3
Page 1 of 2

procedural posture of the case." *Id.* Finally, even defendants'
counsel opposes Long's objections to the fee request, opining that
"[c]lass Counsel in this case have had to perform more work than
most attorneys in class actions. The zealous representation on
both sides has culminated in a compromise viewed as fair,
reasonable, and adequate by lead counsel with over seventy years
combined experience." Ds. Feb. 14, 2010 Resp. 17-18.

E

The court now cross-checks its finding by analyzing the
request under the lodestar method. *See Shaw*, 91 F.Supp.2d at 968.
Under this method, the court takes the recorded hours worked by the
attorneys and multiplies them by a reasonable hourly rate. *See,
e.g., Forbush v. J.C. Penny Co.*, 98 F.3d 817, 821 (5th Cir. 1996).
The resulting lodestar amount may then be adjusted upward or
downward depending on the court's application of the *Johnson*
factors. *See id.*

Counsel provided records of billable hours expended on this
litigation from 2003 through 2009; the total of all three
attorneys' time is approximately 22,032 hours. This time does not
include work done in the first three months of 2010, during which
the fairness hearing took place and numerous pleadings and briefs
were filed. To account for the attorneys' time worked since
December 2009, the court will add 250 hours to the total of all
three attorneys (which is probably conservative). This results in

- 99 -

EXHIBIT A3
Page 2 of 2

# ART BRENDER



Married to Lynda Brender, for 42 years, and the fa
paralegal with Advanced Micro Devices in Austir
internal medical physician with Rogue Valley Me
Oregon; and John, an attorney formerly with the f
Assistant District Attorney with the Dallas County
Office. Art has five grandchildren, Molly (11), El
Blankenship (4), and Sulayman (5) and Rayan Ri;

- University of Texas, BA 1968, J.D. 1973
- Board Certified, Texas Board of Legal Special
  Trial Law
- Board Certified, Texas Board of Legal Special
- National Board of Trial Advocacy
- Licensed in all federal courts in Texas, the Fift
  Federal Court of Claims, and the United States
- Lt.(jg) United States Navy, 1968-71
- NAACP "Outstanding Service in the Field of (
- Texas Woman's Political Caucus "Good Guy /
- Eldon Mahon Inn of Court
- State Bar of Texas Pattern Jury Charge Comm
- Co-Chair, Individual Rights and Responsibiliti
  Texas State Bar
- President, Humane Society of North Texas
- Chairman, West Meadowbrook Neighborhood
- Board Member, Tarrant County Bar Associatic
- Parish Council, St. Rita's Catholic Church
- American Board of Trial Advocates
- "Texas Super Lawyers" – Texas Monthly
- "Attorneys of Excellence" - Fort Worth Busine
- "Power Attorneys 2010 Award" - Fort Worth I
- "2010 H.G. Wells Outstanding Trial Lawyer A
  Trial Lawyers
- Author: "Police Reports - Driving While Intox
  Journal of Criminal Law, Feburary, 1972

- "Fifth Circuit Survey - Consumer Law" – Texas Tech Law
  Review, Vol. XVI (1985)
- *"Plaintiff's Procedural and Strategic Issues in Suing the
  Government"* – Seminar: *Suing and Defending Governmental
  Entities*, State Bar of Texas (2008)






Designated "Super Lawyer" by Thomson Reuters and "Top Attorney" by Fort Worth, Texas Magazine Venture, LP

# JASON C.N. SMITH

EXHIBIT A4
Page 1 of 1

HOME    ATTORNEYS ▾    STAFF    TIPS    AWARDS/MEDIA ▾    CONTACT

## Fred Streck, III







- Attorney, The Dent Law Firm, 1990-Present
- Attorney, Kugle, Stewart, Dent & Frederick, 1986-1989
- Board Certified, Personal Injury Trial Law by the Texas Board of Legal Specialization,
- Board Certified, Civil Trial Advocacy by the National Board of Trial Advocacy
- Admitted, U.S. District Court, Northern and Southern Divisions
- Admitted, U.S. Court of Appeals, 5th Circuit

## EDUCATION

- 1986 *Juris Doctorate,* St. Mary's University Law School
  - 1985-1986 Executive Editor, St. Mary's Law Journal
  - 1985 & 1986 Who's Who in American Law Schools

- 1983 *Bachelor of Arts in Business, Magna Cum Laude,* Texas Christian University
  - Chancellor's Scholar
  - Student Foundation Scholar
  - Beta Gamma Sigma (top 5% of Business School)
  - Mortar Board
  - Phi Delta Theta Fraternity
  - Four Year Track Scholarship
  - 4 times All Southwest Conference
  - 2 times All American
  - 1982-1983 Dutch Meyer Award (top student-athlete)
  - Who's Who in American Colleges & Universities

## MILLION DOLLAR VERDICTS

- Pauline Rico vs. W.B. Hudspeth, Inc. $1.8 Million

EXHIBIT A5

Page 1 of 2
3/3/2016

# PROFESSIONAL MEMBERSHIPS

- <u>Million Dollar Advocates Forum</u>
- <u>Who's Who in American Law</u>
- <u>College of the State Bar of Texas</u>
- <u>Pro Bono College of the State Bar of Texas</u>
- <u>American Bar Association</u>
- <u>American Trial Lawyers Association</u>
- <u>Texas Trial Lawyers Association</u>

1120 Penn Street • Fort Worth , TX 76102 - 817-332-2889 • FAX 817-332-5809

EXHIBIT A5

Page 2 of 2

3/3/2016

HOME | ATTORNEYS ▾ | STAFF | TIPS | AWARDS/MEDIA ▾ | CONTACT

## Dwain Dent



Founder, The Dent Law Firm, 1990
Board Certified, Personal Injury Trial
Law by the Texas Board of Legal
Specialization, State Bar of Texas and
the National Board of Trial Advocacy
Extensive Healthcare Pharmaceutical
and General Tort Claims Representation
Admitted, U. S. District Court, Northern
Division
Admitted, U. S. Court of Appeals, 5th
Circuit
Admitted, U. S. Supreme Court





# EDUCATION

1973    <u>Texas Christian University</u>
        Fort Worth, Texas

*Major: Political Science Minor: Economics*

1976    <u>St. Mary's University Law School</u>
        San Antonio, Texas

*Degree: Juris Doctorate*

## PROFESSIONAL ACTIVITIES & RECOGNITIONS

State District Advisory Committee for District 90
on State Insurance Law Revision

Speaker to State Bar and various legal and
medical groups

Recognized, St. Mary's Law School Distinguished
Law Graduate 2012

St. Mary's Law School Hall of Fame Inductee 2013

EXHIBIT A6
Page 1 of 8

Recognized, Preeminent Lawyers of America by
Martindale Hubbell, 2000 to present

Recognized, Texas Monthly Magazine – Super
Lawyers 2003, 2004, 2005, 2006, 2007, 2008,
2009, 2010, 2011

Recognized, Best Lawyers in America

Recognized, Fort Worth, Texas Magazine – Top
Tarrant County Lawyer, 2002, 2003, 2004, 2005,
2006, 2007, 2008, 2009, 2010, 2011

Recognized Top 100 Trial Lawyers,
Texas—American Trial Lawyers Association 2007,
2008, 2009, 2010, 2011

Recognized, Who's Who in American Law, 1986 to
present

Trial Lawyer of The Year Finalist, 2011
Public Justice Foundation, Washington D.C.

## PROFESSIONAL MEMBERSHIPS

Board of Directors, Texas Trial Lawyers
Association 1989-2002

Texas State Delegate, Association of Trial Lawyers
of America 1999-2000

Life Membership Designee, Association of Trial
Lawyers of America

President's Club, American Association for Justice

Million Dollar Advocates Forum, membership
limited to trial lawyers who have won a verdict or
settlement of One Million dollars or more

Member, Tarrant County Bar Association

Fellow, Texas Bar Foundation

Member, Trial Lawyers for Public Justice
Foundation

Member, Civil Courts Building Advisory
Committee, Tarrant County, Texas, 2008-2012

## COMMUNITY ACTIVITIES

EXHIBIT A 6
Page 2 of 8

Founder and Board of Director, Spencer B. Dent
Memorial Foundation—501(c) dedicated to youth
sport activities

Board of Director/Little League Coach, West Side
Little League

Former Board of Director/Coach, Ridglea
Roughnecks Pee Wee Football Association

Historic Preservation Council for Tarrant County
1992 Recipient Pedestal Award
2005 Stewaed Award

Member, United States Supreme Court Historical
Society

Weekly Radio Host/Legal Commentator, KRLD
1080AM Radio in Dallas-Fort Worth,
*The Loftin and Dent Show, 1996-2004*

Legal Analyst, Fox 4 News Dallas-Fort Worth, TX

State District Advisory Committee for District 90
on State Insurance Law Revision

Speaker to State Bar and various legal and
medical groups

# SIGNIFICANT CASE INVOLVEMENT

### Pharmaceutical Cases:

Crystal Lutz v. O'Neal, Jones & Feldman
Pharmaceuticals,
February 1986, 352nd District Court, Tarrant
County, Texas

Micheal Swatsell vs. O'Neal, Jones & Feldman
Pharmaceuticals,
February 1986, 352nd District Court, Tarrant
County, Texas

Jennifer Strittmatter v. O'Neal, Jones & Feldman
Pharmaceuticals,
March 1986, 153rd District Court, Tarrant County,
Texas

Daniel Sturman v. O'Neal, Jones & Feldman
Pharmaceuticals,

EXHIBIT A6
Page 3 of 8
3/3/2016

March 1986, 153rd District Court, Tarrant County,
Texas

Michael D. Tatum v. O'Neal, Jones & Feldman
Pharmaceuticals,
March 1988, 352nd District Court, Tarrant County,
Texas

Alice & Joe Hernandez v. O'Neal, Jones & Feldman
Pharmaceuticals,
January 1995, 236th District Court, Tarrant
County, Texas

Rose Doskosil v. O'Neal, Jones & Feldman
Pharmaceuticals,
January 1995, 236th District Court, Tarrant
County, Texas

Gary and Katherine Mills v. O'Neal, Jones &
Feldman Pharmaceuticals,
January 1995, 236th District Court, Tarrant
County, Texas

David and Lori Nelson v. O'Neal, Jones & Feldman
Pharmaceuticals,
January 1995, 236th District Court, Tarrant
County, Texas

Brinkley Eskew v. O'Neal, Jones & Feldman
Pharmaceuticals,
January 1995, 236th District Court, Tarrant
County, Texas

Juan and Manuela Coronado v. O'Neal, Jones &
Feldman Pharmaceuticals,
December 1997, 236th District Court, Tarrant
County, Texas

Manuela Coronado v. O'Neal, Jones & Feldman
Pharmaceuticals,
December 1997, 236th District Court, Tarrant
County, Texas

Christopher Brite v. O'Neal, Jones & Feldman
Pharmaceuticals,
June 2002, 236th District Court, Tarrant County,
Texas

Kimberley Dunn v. O'Neal, Jones & Feldman

EXHIBIT A6
Page 4 of 8

Pharmaceuticals,
June 2002, 236th District Court, Tarrant County,
Texas

Eddie Jackson v. O'Neal, Jones & Feldman
Pharmaceuticals,
June 2002, 236th District Court, Tarrant County,
Texas

Bret Lovelady v. O'Neal, Jones & Feldman
Pharmaceuticals,
June 2002, 236th District Court, Tarrant County,
Texas

Lanisha Powell v. O'Neal, Jones & Feldman
Pharmaceuticals,
June 2002, 236th District Court, Tarrant County,
Texas

Jacque White v. O'Neal, Jones & Feldman
Pharmaceuticals,
June 2002, 236th District Court, Tarrant County,
Texas

100 S.W.3d 582 (Tex. App.—Fort Worth 2003),
2-02-373, In re Fort Worth Children's Hosp.
—Hospital ordered to provide the names of all
infants who received the vitamin supplement
E-Ferol while patients a Cooks in 1984 so parents
could be informed

## Federal District Court Opinions on Class Action:

Victoria Klein and Ashley Swadley v. O'Neal, Inc.,
et al.,
June 2003, U.S. District Court for the Northern
District of Texas,
Cause No. 7-03-CV-102-D—E-Ferol class-action
lawsuit.

## Aviation:

856 F.2d 28 (5th Cir. 1988), In re Air Crash at
Dallas/Fort Worth Airport on Aug. 2, 87-
1855—severe brain damage mother of 2 in airline
crash

Robert Buckingham vs. Mitsubishi, May 1992,
348th District Court, Tarrant County,
Texas—airplane crash with multiple deaths

EXHIBIT A6
Page 5 of 8

Prince v. Helicopter Consultants of Maui, Inc.
d/b/a Blue Hawaiian Helicopters, July 2001,
Second Circuit Court, State of Hawaii—helicopter
crash causing the death of two 14-year-old girls

87 S.W.3d 139 (Tex. App.—Fort Worth 2002),
2-02-058, In re Bell Helicopter Textron, Inc.
—helicopter crash with multiple deaths

### Actions Involving Death, Significant Injuries or Statewide Judicial Importance:

Patterson v. The City of Arlington, Texas,
1983, 153rd District Court, Tarrant County,
Texas—death of a child due to city negligence.

Burchman v. The City of Arlington, Texas, 1983,
153rd District Court, Tarrant County,
Texas—severe internal injuries due to city
negligence.

Shinn v. The City of Arlington, Texas, 1983,
153rd District Court, Tarrant County,
Texas—irreparable brain damage due to city
negligence

Coleman v. GE, Company, September 1986,
348th District Court, Tarrant County,
Texas—death of spouse due to defective coffee
maker

753 S.W. 2d 779 (Tex. App.—Fort Worth 1988),
2-87-210, Mendoza v. Ranger Ins. Co.—Plaintiff's
right to a fair and impartial trial—constitutional
right

854 F.2d 742 (5th Cir. 1988),
88-2238, Northbrook Nat. Ins. Co. v.
Brewer—Amicus Brief supporting injured workers
right to state court trial

Alley v. Eagle Crest Apartments & Balcor Property
Management, Inc., September 1989,
153rd District Court, Tarrant County,
Texas—shooting death of a college student

776 S.W.2d 812 (Tex. App.—Fort Worth 1989),

EXHIBIT A6
Page 6 of 8
3/3/2016

2-89-139, City of Bedford v. Schattman—child severely crushed at crosswalk by City of Bedford truck driver

Tennessen v. Resurrection Paint Co., Inc., November 1990,
48th District Court, Tarrant County,
Texas—significant acid burn at construction site

873 S.W.2d 379 (Tex. 1994),
94-0198, State ex rel. Curry v. Walker—gunshot to Engineer from over pass by minors, bullet logged in spine area

Martha McDonald v. American Home Products Corp., December 1998,
17th District Court, Tarrant County,
Texas—pharmaceutical litigation regarding Fen-Phen, permanent heart damage

Matt Moore vs. North American Specialty Insurance Co., December 1998,
236th District Court, Tarrant County,
Texas—insurance carrier's refusal to provide nursing care to quadriplegic TCU Football player.

Eager v. YMCA, March 1999,
236th District Court, Tarrant County, Texas—15-year-old child drowns in pool with lifeguards on duty and inattentive

Debra Welter v. Apollo Transfer Co., et al., March 1999,
48th District Court, Tarrant County,
Texas—Plaintiff's husband killed when ejected from vehicle

Ronald Beck v. State Farm Ins. and Allen Wexler, June 1999,
342nd District Court, Tarrant County,
Texas—crane struck by vehicle causing paralysis from chest down

Karen Love, et al. vs. The Hammerblow Corporation, March 2002,
18th District Court, Johnson County,
Texas—Spouse was killed when a trailer became disengaged and collided with vehicle

EXHIBIT A6
Page 7 of 8

Juana Burton v. Randy J. Henderson, May 2002,
249th District Court, Johnson County,
Texas—Plaintiff paralyzed in an intersection
collision

Cynthia Martin, et al. vs. National Bank of Texas
at Fort Worth, December 2003,
249th District Court, Johnson County,
Texas—Spouse killed in auto/pedestrian incident

In re Cisneros, 021507 TXCA 11, 11-06-00290,
February 2007,
Court of Appeals of Texas, Eleventh District,
Eastland—Husband and father of 1 killed in
interstate trucking collision. Mandamus action
against rural county District Judge.

Marshall and Jamie Lowe v. Glenview Quick Mart,
et al., August 2008,
236th District Court, Tarrant County, Texas—sale
of alcohol to minor children who ultimately died in
tragic car incident

Royce Bunkley v. Camtech Precision
Manufacturing Inc., August 2009,
248th District Court, Tarrant County,
Texas—Metal plant worker crushed beneath steel
plate. Employer grossly negligent

Monique Stallworth v. Slumberjay, May 2012,
127th District Court, Harris County, Texas—Death
of driver forced to drive overweight truck on rural
roads in thunderstorm. Employer grossly
negligent

Donnie and Linda Graves v. Ben E. Keith,
September 2012, 141st District Court, Tarrant
County, Texas—Plaintiffs' vehicle struck head-on
by a truck crossing the center median on
Interstate Highway 20

1120 Penn Street • Fort Worth , TX 76102 - 817-332-2889 • FAX 817-332-5809

EXHIBIT _A6_
Page _8_ of _8_

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARGUERITE HOFFMAN,                    §
                                       §
                    Plaintiff,         §
                                       § Civil Action No. 3:10-CV-0953-D
VS.                                    §
                                       §
L&M ARTS, et al.,                      §
                                       §
                    Defendants.        §

MEMORANDUM OPINION
AND ORDER

Plaintiff Marguerite Hoffman ("Hoffman") moves for an award of $294,525.45 in attorney's fees and expenses, and prejudgment interest, under the court's memorandum opinion and order granting in part her motion for sanctions against defendant L&M Arts ("L&M"). *See Hoffman v. L&M Arts*, 2015 WL 1000864, at *4-7 (N.D. Tex. Mar. 6, 2015) (Fitzwater, J.) ("*Hoffman IX*"). For the reasons that follow, the court awards Hoffman the sum of $202,477 in attorney's fees and $13,766.25 in expenses, and it declines to award prejudgment interest.[1]

I

In *Hoffman IX* the court held that Hoffman is entitled to recover under Fed. R. Civ. P. 37(a)(5) the attorney's fees and expenses she reasonably incurred in connection with her June 18, 2013 motion to compel L&M to provide further testimony, and her June 18, 2013

---

[1]Although the parties have made sealed filings concerning Hoffman's fee request, the court concludes that this memorandum opinion and order need not be sealed.



second motion to compel L&M to comply with its discovery obligations and for sanctions, *Hoffman IX*, 2015 WL 1000864, at *4, and to recover under Rule 37(b)(2)(C) the attorney's fees and related costs that she incurred in preparing for and taking the April 12, 2013 deposition of Dominique Lévy ("Lévy"), *id.* at *5. Because the court could not determine the attorney's fees and expenses that Hoffman had reasonably incurred, it directed that she submit additional supporting evidence and briefing. Hoffman now requests attorney's fees in the sum of $294,525.45, consisting of $7,999.20 in fees for work performed by Bart Wulff, Esq. ("Wulff"), $272,760 in fees for work performed by six attorneys with the law firm of Wilkie Farr & Gallagher LLP ("Wilkie Farr"), and $13,766.25 in expenses. She also requests an award of an unspecified amount of prejudgment interest.

## II

This court generally follows a two-step process when determining the amount of an attorney's fee award:[2]

> First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

---

[2]Both parties rely on this paradigm in litigating Hoffman's fee application; neither party contends that it is inapposite when determining a fee award under Rule 37.

- 2 -

EXHIBIT A 7
Page 2 of 23

*Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010) (some citations omitted).[3]

The fee applicant bears the burden of substantiating both the requested hours and the hourly

rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### III

The court begins by determining what are the reasonable hourly rates for the attorneys

who provided the services included in Hoffman's fee request.

### A

Hoffman moves for an award of fees for the services of seven attorneys: Wulff, who

practices with the law firm of Koning Rubarts LLP, in Dallas, and Roger Netzer, Esq.

("Netzer"), Mary Eaton, Esq. ("Eaton"), Ian Hochman, Esq. ("Hochman"), Dan Kozusko,

Esq. ("Kozusko"), Ian Christy, Esq. ("Christy"), and Hayley Tozeski, Esq. ("Tozeski"), who

practice with the Wilkie Farr law firm, in New York City. Hoffman requests that Wulff's

services be compensated at the hourly rate of $460, which she maintains represents as much

---

[3]The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Supreme Court has barred any use of the sixth factor. *Merrick v. Scott*, 2011 WL 1938188, at *1 n.3 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.) (quoting *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 193 (5th Cir. 1999)). And the second factor generally cannot be used as a ground for enhancing the award. *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010).

as a 16.5% reduction from his standard hourly rate of $500 to $550. She requests that the

court award fees for the Wilkie Farr attorneys at hourly rates based on what they charged in

2013 ($1,130 for Netzer, $935 for Eaton, $780 for Hochman, $770 for Kozusko, $645 for

Christy, and $605 for Tozeski), discounted by 20% (e.g., Netzer's hourly rate of $1,130

would become $904). Hoffman contends that these undiscounted rates are consistent with

those customarily charged in the Dallas Division of the Northern District of Texas for similar

legal services; that experienced trial attorneys who handle high-stakes complex litigation in

Texas increasingly charge $1,000 or more per hour, and that her counsels' hourly rates are

consistent with those charged by L&M's attorneys. Hoffman posits that the maximum hourly

rate that she seeks—$904 for Netzer, a senior partner with 30 years' experience—is

significantly lower than the rate that has been approved in this district for equally

experienced counsel. Accordingly, Hoffman contends that the discounted hourly rates that

she seeks for attorney's fees incurred in connection with her motions to compel and the Lévy

deposition are reasonable.

 L&M argues on several grounds that the hourly rates that Hoffman seeks for the

Wilkie Farr attorneys are excessive.

B

 "The hourly rates to be used in the lodestar calculation are determined by 'the

prevailing market rates in the relevant community.'" *Inclusive Cmtys. Project, Inc. v. Tex.

Dep't of Hous. & Cmty. Affairs*, 2013 WL 598390, at *5 (N.D. Tex. Feb. 15, 2013)

(Fitzwater, C.J.) (quoting *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *15

- 4 -



EXHIBIT _A7_

Page _4_ of _23_

(N.D. Tex. Dec. 20, 2005) (Fitzwater, J.)), *rev'd on other grounds*, 747 F.3d 275 (5th Cir. 2014), *aff'd*, ___ S.Ct. ___ (2015). "The prevailing market rate is the rate charged 'for *similar services* by lawyers of reasonably comparable skill, experience, and reputation.'" *Barrow*, 2005 WL 6789456, at *16 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

Because the prevailing market rate is that charged for "similar services," the court considers the type of representation and the subject matter of the litigation. "[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation and internal quotation marks omitted); *see also McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-83 (5th Cir. 2011) (stating that, except in certain limited circumstances, district courts must "consider the customary fee for similar work 'in the community,'" not rate charged in out-of-district attorney's home community).

As the fee applicant, Hoffman bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (applying federal law); *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 4275277, at *2 n.4 (N.D.

EXHIBIT A7

Page 5 of 23

Tex. Oct. 29, 2010) (Fitzwater, C.J.) (same).

C

The court concludes that the hourly rate of $460 that Hoffman requests for Wulff's services is reasonable.  L&M does not object to this hourly rate.  In fact, L&M argues that "[p]robably the best evidence of the prevailing rate in Dallas for a lawyer like Netzer in a case like this is the hourly rate of Mr. Netzer's co-counsel Bart Wulff, who now charges $500-550 per hour, but charged Hoffman only $460 during the time in question." D. Br. 14.

Netzer and Wulff are both attorneys who had more than 25 years' experience in 2013. They therefore fall within the same experience category in the State Bar of Texas 2013 Hourly Rate Fact Sheet, State Bar of Texas, Department of Research & Analysis ("Fact Sheet").  *See, e.g.,* D. App. 73 (reflecting median hourly rates by years of experience and region).[4]  But Wulff practices with a law firm of 2 to 5 attorneys, and Netzer practices with a law firm of over 400 attorneys.  The Fact Sheet reflects that the median hourly rate in 2013 for attorneys in a firm of 2 to 5 attorneys in the Dallas-Fort Worth-Arlington MSA was $239, and the median hourly rate for attorneys in a firm of over 400 attorneys was $420, meaning that the median hourly rate for lawyers in the Dallas-Fort Worth-Arlington MSA at firms of

---

[4]The court may properly consider the Fact Sheet as a basis for determining a reasonable hourly rate.  *See, e.g., Jiwani v. United Cellular, Inc.*, 2014 WL 4805781, at *5 (N.D. Tex. Sept. 29, 2014) (Toliver, J.) (taking judicial notice of State Bar of Texas, Department of Research & Analysis' 2011 Hourly Fact Sheet as a starting point for ascertaining an appropriate hourly market rate for plaintiff's counsel).  In fact, L&M relies on the 2013 Fact Sheet and includes it in its appendix in opposition to Hoffman's sanctions request.

- 6 -

EXHIBIT A7
Page 6 of 23

over 400 attorneys was 176% of the median hourly rate for lawyers with law firms of 2 to 5 lawyers. Based on the Fact Sheet and the court's own expertise, it deems it reasonable to start with Wulff's hourly rate of $460, which L&M does not contest, use that rate as the starting point to apply to Netzer as a lawyer who, like Wulff, had more than 25 years' experience in 2013, and apply a 176% multiplier based on the size of the Wilkie Farr law firm, resulting in a reasonable hourly rate for Netzer's services in this case of $810 in 2013.

The Fact Sheet also reflects the reasonable median hourly rates for less senior lawyers practicing in the Dallas-Fort Worth-Arlington MSA. Based on the Fact Sheet and the court's own expertise, it is able to determine a reasonable hourly rate for less senior attorneys by comparing their median rates to those of lawyers with more than 25 years' experience. The Fact Sheet reflects that in the Dallas-Fort Worth-Arlington MSA in 2013, the median hourly rate of a lawyer with 16 to 20 years' experience was 94.6% of the hourly rate of a lawyer with over 25 years' experience; the median hourly rate of a lawyer with 7 to 10 years' experience was 81.9% of the hourly rate of a lawyer with over 25 years' experience; and the median hourly rate of a lawyer with 3 to 6 years' experience was 74.2% of the hourly rate of a lawyer with over 25 years' experience. Accordingly, applied to Netzer's reasonable hourly rate of $810 and his over 25 years' experience, a fee calculated at 94.6% results in a reasonable hourly rate of $766 for Eaton and Hochman; a fee calculated at 81.9% results in an hourly rate of $663 for Kozusko; and a fee calculated at 74.2% results in a reasonable hourly rate of $601 for Christy and Tozeski. *See* D. App. 73. Accordingly, the court finds that the reasonable hourly rates for similar services by lawyers of reasonably comparable

- 7 -

EXHIBIT A7
Page 7 of 23

skill, experience, and reputation in the community in which this court sits are as follows: Wulff, $460; Netzer, $810; Eaton, $766; Hochman, $766; Kozusko, $663; Christy, $601; and Tozeski, $601.

The court recognizes that the median hourly rate for Dallas-Fort Worth-Arlington MSA attorneys with over 25 years' experience was $299 in 2013, with 16 to 20 years' experience was $283, with 7 to 10 years' experience was $245, and with 3 to 6 years' experience was $222; that the median hourly rate for Dallas-Fort Worth-Arlington MSA attorneys at firms of over 400 attorneys was $420 in 2013; and that the median hourly rate for attorneys practicing commercial litigation was $265 in 2013. But these are median rates for all attorneys within these categories, and the geographical categories include Fort Worth and Arlington, where rates are often lower than are charged in Dallas. Moreover, the nature and complexity of this litigation warrant compensating the services of the Wilkie Farr attorneys at higher levels than are represented by the median rates reflected in the Fact Sheet.

## IV

Having determined the reasonable hourly rates for Hoffman's attorneys, the court next considers L&M's objections to the time expended.

## A

Hoffman requests that the court award her fees for 19.3 hours expended by Wulff and 721.7 hours (less discounts) expended by the Wilkie Farr attorneys. She begins by contending that her attorneys incurred 170.3 hours in connection with the Lévy deposition and 681.4 hours in connection with the motions to compel. She maintains that she has

- 8 -

EXHIBIT A7
Page 8 of 23

reduced these hours for any time spent on purely clerical tasks.  Although the court cannot

find where she has explicitly quantified the time that she has eliminated on this basis, her

attorney's declaration and a supporting exhibit identify 832.4 hours of attorney and legal

assistant time in total, which she then reduces to 721.7 hours of attorney time (she excludes

all legal assistant time) as the starting point for her other deductions.  In her appendix,

Hoffman breaks down these 721.7 hours according to each attorney and the attorney's pre-

discounted hourly rate, Netzer opines that the value of these 721.7 hours is $568,250.

Hoffman then discounts the hourly rate of each Wilkie Farr attorney by 20%, resulting in a

net value of recoverable fees of $454,600.

   Hoffman then further reduces the sum of $454,600 by 30% (i.e., $136,380) to account

for block billing.  And she further reduces the sum of $454,600 by another 10% (i.e.,

$45,460) in order to exercise billing judgment, thereby eliminating time that may have been

duplicative, was not incurred in connection with the Lévy deposition or the motions to

compel, or that is otherwise unrecoverable.  This results in a net fee request of $272,760 for

the services of the Wilkie Farr attorneys.

   L&M responds that Hoffman should recover for no more than 164.52 hours of time

expended by Wilkie Farr attorneys.  It agrees that a 30% discount to account for block billing

is appropriate, but it contends that an additional 30% discount is also justified because

Hoffman's proposed additional 10% reduction is insufficient to account for duplicative,

excessive, and vaguely recorded time.  L&M also requests that the court exclude certain

specific time entries and further reduce by an additional 10% the time expended by all of

EXHIBIT A7

Page 9 of 23

Hoffman's attorneys to account for time spent on the parts of the motions to compel that the court denied. L&M posits that Hoffman should not be permitted to recover the costs incurred in preparing for and taking Lévy's deposition, and that even if she is permitted to recover these fees, certain time should be excluded as unnecessary or duplicative, a 30% deduction should be made to account for block billing, and an additional 15% deduction should be made to account for excessive or duplicative work.

### B

The court begins with the requested discount for block-billed hours.[5] Because Hoffman and L&M appear to agree that a 30% discount in Wilkie Farr's hours attributable to the motions to compel and Lévy deposition would adequately account for Wilkie Farr's practice of block billing, the court discounts the requested time by 30%.

### C

The court next considers whether Wilkie Farr's hours attributable to the motions to compel should be discounted more than Hoffman's proposed 10% to account for time that

---

[5]The term "block billing" refers to the disfavored "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.) (citation omitted). Block billing is disfavored because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended. *Id.* "For example, a person engaging in block billing would record the total amount of time spent on a case that day, and then group several tasks under that single entry, leaving the court unable to determine how much time was devoted to a given task." *Inclusive Cmtys. Project, Inc.*, 2013 WL 598390, at *4 (citation omitted).

is duplicative, excessive, or vaguely recorded.

1

L&M contends that Wilkie Farr's time records reflect excessive and duplicative time, with Christy spending 259.4 hours (more than six weeks' time) on the motions to compel, and Netzer, Eaton, and Kozusko spending an additional 79.7 hours, 82.4 hours, and 103.4 hours, respectively; that Wilkie Farr's time records contain impermissibly vague time entries that fail to reveal what the attorneys were doing in connection with the billed time and therefore fail to demonstrate that the time spent was reasonable; and that the manner in which the Wilkie Farr lawyers prepared their excerpted billing records places the accuracy of the records in doubt, because the lawyers altered their contemporaneous block-billed entries and then estimated (more than two years later) the percentage of a day's total hours that were spent on the tasks related to the motions to compel and Lévy's deposition.

Hoffman replies that L&M has failed to make any particularized challenges to Wilkie Farr's time entries, instead simply listing the hours billed by each attorney and declaring them "excessive," and that the court should reject L&M's broad challenge to the hours billed in connection with the motions because Hoffman has explained why it was necessary for Wilkie Farr to devote the hours it did to the motions, much of which was the product of L&M's own conduct. She next contends that L&M has failed to show why the reductions already applied—30% for block billing and 10% for billing judgment, including time that may be unrecoverable—are insufficient, and that attorneys frequently must review their billing records years after the fact and use their best professional judgment to determine what

- 11 -

work was performed in connection with certain motions.

2

L&M is requesting a 60% reduction in Hoffman's attorneys' hours to account for time entries that it maintains are duplicative, excessive, vaguely recorded, or block-billed. But other than challenging 46.4 of Netzer's hours based on his use of vague descriptions[6] and generally contesting the amount of time Wilkie Farr attorneys spent on the motions to compel and the methodology by which the firm prepared its billing records, L&M does not point to any specific time entries that are duplicative, excessive, or vaguely recorded.

If a party does not object to particular billing entries as inadequately documented, the

---

[6]The party seeking reimbursement of attorney's fees meets its burden of establishing the number of hours expended by "presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 2010 WL 3294248, at *2 (N.D. Tex. Aug. 20, 2010) (Fitzwater, C.J.) (quoting *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). "Exceptionally terse descriptions of activities do not constitute sufficient documentation." *Id.* (citing *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997) (disallowing fees for "research and review of cases" because entry was impermissibly vague); *Cookston v. Freeman, Inc.*, 1999 WL 714760, at *2 (N.D. Tex. Sept. 14, 1999) (Fitzwater, J.) (collecting cases)). "Litigants take their chances when submitting such fee applications, as they provide little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). Billing entries must explain the subject matter of the task enough to allow the court to determine whether the time was reasonably expended. *See Fralick*, 2011 WL 487754, at *7.

The court agrees that Netzer's billing entries stating "Move to compel," "Reply on motion to compel," "Mtc reply" and "Reply compel," D. App. 52, are vague and should be reduced. D. App. 52; *see Fralick*, 2011 WL 487754, at *7 (applying 10% reduction to vague entries). But because the court is otherwise imposing a sufficient reduction in the fees that Hoffman requests, it concludes that it need not make a further reduction based on vague time entries.

- 12 -

court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing.  *See generally La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) (holding that district court erred in failing to conduct full analysis of billing records "[a]s to the specific items of which [opposing party] complains").  It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention.  *See, e.g., Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 2009 WL 361956, at *4 (N.D. Tex. Feb. 13, 2009) (O'Connor, J.) (analyzing "specific entries identified by [opposing party]"), *vacated on other grounds*, 612 F.3d 800 (5th Cir. 2010); *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, 2008 WL 3992060, at *4 (N.D. Tex. Aug. 20, 2008) (Robinson, J.) ("Defendants refer to only 7 billing entries that they contend are 'vague.'  Of those entries referenced by the Defendants, the Court finds that the following billing entries are too vague[.]"); *Barrow*, 2005 WL 6789456, at *12 ("examining the individual entries to which [the opposing party] objects").

Hoffman has already discounted Wilkie Farr's requested hours by an additional 10% in the exercise of billing judgment to account for time that was duplicative, not incurred in connection with the Lévy deposition or the motions to compel, or otherwise unrecoverable. And as the court explains below, it is applying a 20% threshold reduction, followed by a 30% reduction for block billing and 10% billing judgment reduction to the 721.7 hours for which Hoffman is seeking compensation.  L&M has failed to show that percentage reductions of this magnitude are insufficient to account for any time entries that are duplicative, excessive, or vaguely recorded.  *See, e.g., Hancock v. Chi. Title Ins. Co.*, 2013 WL 2391500, at *9

(N.D. Tex. June 3, 2013) (Fitzwater, C.J.) (refusing to reduce fees further because the "reduction that Chicago Title is taking on its own," i.e., 8.77% for "billing judgment" was "comparable" to the "10% reduction" that "the court has imposed in prior cases where evidence of billing judgment was absent.").

D

L&M contends that the Wilkie Farr time records reflect many entries that should be excluded as unrecoverable, including 5.3 hours incurred in connection with L&M's motion to strike Hoffman's reply appendix and 29.2 hours incurred in connection with L&M's motion to disregard new arguments and materials, or, in the alternative, for leave to file a surreply. Hoffman responds that her attorneys' work in responding to these requests was "in connection" with the motions because both applications sought either to strike papers filed by Hoffman in support of the motions or to grant L&M leave to submit surreplies in opposition. The court agrees with Hoffman, and it declines to exclude completely Hoffman's request for fees for time incurred in connection with L&M's motion to strike or L&M's motion for leave to file a surreply. Both of L&M's motions relate to Hoffman's motions to compel, and any work Hoffman's attorney's performed in connection with to L&M's motions would fairly be considered related to her motions to compel.

L&M also contends that Hoffman should not be permitted to recover .5 hours that Kozusko attributed to "team meeting" and "case management tasks" or 1.8 hours that Netzer attributed to "Meeting with team" and "Meeting with Ian Christy and Eli Rubin," because these entries do not reflect work performed in connection with the motions to compel. D. Br.

- 14 -

21. Hoffman responds that she has provided sworn testimony that, in her counsel's "best professional judgment," all entries on the "Recoverable Time Records" were "incurred in connection with either the Lévy Deposition or the Motions," P. Reply 8; that L&M does not challenge the credibility of this testimony; and that, in any event, Hoffman's counsel's 10% billing judgment reduction expressly accounts for entries such as these and L&M has failed to show why that is insufficient. The court agrees, and it therefore declines to eliminate these fees, apart from the percentage reductions taken below.

E

L&M posits that because Hoffman was only partially successful on her motions to compel (both motions were granted in part and denied in part) and because it is impossible to distinguish between time spent on successful and unsuccessful parts of these motions, the court should further discount Hoffman's total time (including time billed by Wulff) by at least an additional 10%. The court declines to do so. Rule 37(a)(5)(C), on which L&M relies, provides that a court "*may*, after giving an opportunity to be heard, apportion the reasonable expenses for [a] motion [to compel that is granted in part and denied in part]." Rule 37(a)(5)(C) (emphasis added). In *Hoffman IX* the court did not conclude that Hoffman's fees should be apportioned on this basis. It held that Hoffman is entitled to recover the attorney's fees that she incurred in connection with her June 18, 2013 motions to compel. *Hoffman IX*, 2015 WL 1000864, at *4. Moreover, in the court's October 2, 2013 memorandum opinion and order, it granted Hoffman substantially all the relief she

- 15 -

requested.[7]  The court thus declines (especially given the other reductions being applied already) to further reduce Hoffman's recoverable hours for time attributable to unsuccessful grounds of her motions.

F

The court now considers the fees that Hoffman requests for preparing for and taking Lévy's April 12, 2013 deposition.

1

L&M argues that Hoffman should not be awarded any fees or costs related to the Lévy deposition because they were not incurred by reason of L&M's failure to comply with discovery.  It contends that the fees and costs would have been incurred no matter how Lévy answered the deposition questions, so these fees are not assessable under Rule 37, and that the only expenses caused by Lévy's failure to answer questions at her Rule 30(b)(6) deposition that Hoffman is properly requesting are fees and costs associated with filing the resulting motion to compel, which the court has already granted.  The court disagrees.

In *Hoffman IX* the court held that "Lévy's refusal and/or inability to answer questions within the scope of Hoffman's noticed Rule 30(b)(6) topics, which had already been approved by Judge Stickney, constituted a failure to comply with a court order regarding discovery," *Hoffman IX*, 2015 WL 1000864, at *5, and it awarded Hoffman her reasonable

---

[7]The only relief that the court did not grant was Hoffman's request for deposition testimony regarding L&M's net worth and regarding the September 2012 separation of L&M's two principals, to the extent this testimony would be beyond the scope of Hoffman's noticed deposition topics.

- 16 -

expenses, including attorney's fees and related costs incurred in connection with the April 2013 deposition of Lévy. The court declines to revisit that decision.

2

L&M challenges various specific time entries. It contends that Hoffman should not be awarded any fees associated with the continuation of Lévy's individual deposition, which also took place on April 12, 2013, because such fees are in no way connected to Judge Stickney's order regarding L&M's Rule 30(b)(6) deposition. L&M seeks a deduction of 13 hours that Netzer attributes solely to "Lévy prep," 7.6 hours that Eaton attributes to various tasks regarding the "Lévy deposition," and 8.5 hours Christy attributes to "Prep for Lévy deposition," on the basis that both Eaton and Christy appear to separately identify time related to the Rule 30(b)(6) deposition. L&M also requests that the court exclude 2 hours of Netzer's and Eaton's time spent on Lévy's individual deposition; the 11 hours Christy spent attending the deposition, on the ground that he did not ask any questions and that there were three other Wilkie Farr lawyers present; and the 5 hours that Kozusko billed for work related to the deposition, on the grounds that the work was "unnecessary and duplicative" and that Kozusko was not among the four Wilkie Farr attorneys who attended Lévy's deposition.

Hoffman responds that L&M has failed to establish that her counsel segregated time entries as L&M describes, and that, to the contrary, she has already discounted Wilkie Farr's fees to reflect the use of "block billing." Hoffman also contends she has already excluded entirely the time spent by one attorney (Eli Rubin, Esq.) in preparing for the Lévy deposition,

- 17 -

and L&M has not demonstrated why this exclusion, combined with the aggregate 40% reduction that she has already applied, is insufficient to eliminate any preparation for the deposition of Lévy individually. Regarding the 2 hours of Netzer's and Eaton's time spent on the individual portion of Lévy's deposition, Hoffman contends that L&M has disregarded that she has already reduced each attorney's hours on that date by half, and L&M has offered no reason why an additional 2-hour reduction is warranted.

Having reviewed Hoffman's original fee application and her current fee application, the court concludes that, aside from the across-the-board percentage reductions that the court is applying, no further reductions in the time Eaton and Netzer spent preparing for and taking Lévy's deposition are warranted. Regarding the time billed by Christy and Kozusko in connection with Lévy's deposition, the fact that Christy did not ask any questions during the deposition and the fact that Kozusko did not attend the deposition are insufficient of themselves to warrant excluding time that these attorneys spent in connection with preparing for or taking the deposition. And, as noted, the court is making percentage cuts that adequately address L&M's challenges.

3

L&M next contends that Wilkie Farr's time should be further discounted to reflect block billing, inclusion of unrecoverable time, and excessive and duplicative billing. In addition to the 30% discount for block billing, L&M requests a further 15% reduction "to counteract Wilkie [Farr]'s excessive and duplicative billing." D. Br. 24. It cites as an example that Christy attributes 22.6 hours to preparing for Lévy's deposition (even though

- 18 -

he did not take the deposition), in addition to Eaton's billing almost a full 40-hour work week to the deposition and Netzer billing an additional 16.8 hours himself.  The court holds, however, that the percentage reductions being taken, and the reduced hourly rates being awarded, are sufficient to address L&M's arguments.

G

Accounting for the reductions in the requested hourly rates for the Wilkie Farr attorneys and the number of compensable hours, the court calculates the lodestar fee as follows.

The sum of $7,990.20 represents the lodestar amount for the services of Wulff, calculated on the basis of 19.3 hours at $460 per hour, discounted by 10%.[8]

The sum of $194,486.80 represents the lodestar amount for the services of the Wilkie Farr attorneys, calculated as follows.  The court begins with 109.5 hours for Netzer, at the hourly rate of $810; 128.6 hours for Eaton, at the hourly rate of $766; 10 hours for Hochman, at the hourly rate of $766; 108.4 hours for Kozusko, at the hourly rate of $663; 301.5 hours for Christy, at the hourly rate of $601; and 63.7 hours for Tozeski, at the hourly rate of $601. This results in an initial lodestar sum of $486,217.  But this sum is *greater* than what even Hoffman requests for these 721.7 hours.  After she discounts by 20% the fees of the Wilkie Farr attorneys, she obtains a net value of $454,600 for these hours.  The court concludes that

---

[8]Hoffman requests the sum of $7,999.20 for Wulff's services, but this appears to be the result of a mathematical error.  When the initial sum of $8,878 is reduced by 10%, the result is $7,990.20.

EXHIBIT A7
Page 19 of 23

it would be incongruous to award the Wilkie Farr attorneys hourly rates that are *lower* than what Hoffman requests, but then make a fee award that in the aggregate is *higher*. Instead, for consistency, and to account for L&M's other challenges that the court has addressed above, the court will apply a similar 20% threshold reduction to the subtotal of $486,217 (i.e., $97,243.40). The court will then reduce the $486,217 subtotal by 30% (i.e., $145,865.10) to account for block billing, and by an additional 10% (i.e., $48,621.70) to adjust for billing judgment. These reductions result in a net lodestar fee of $194,486.80 for the work of the Wilkie Farr attorneys. Adding together the sums of $7,990.20 for the services of Wulff and $194,486.80 for the services of the Wilkie Farr attorneys, the court calculates the lodestar as $202,477.

V

The court now considers whether the lodestar fee should be adjusted downward under *Johnson*.

There is a strong presumption that lodestar amount represents a reasonable fee. *See Perdue*, 559 U.S. at 553-54; *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Although the court can adjust the lodestar upward or downward after assessing the properly-considered *Johnson* factors, the party seeking the adjustment must establish that an adjustment is warranted. *See La. Power & Light Co.*, 50 F.3d at 329 (citing *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989)). Many of the *Johnson* factors are "presumably fully reflected in the lodestar amount," so such modifications are proper only in certain "'rare' and 'exceptional' cases, supported by both

- 20 -

'specific evidence' on the record and detailed findings." *Del. Valley Citizens' Council*, 478 U.S. at 565 (quoting *Blum*, 465 U.S. at 898-901).

Hoffman contends that several of the *Johnson* factors support her lodestar calculation, but she does not argue for an upward or downward adjustment based on the *Johnson* factors. L&M does not address the *Johnson* factors in its brief.  The court concludes that, because neither party has attempted to prove that the lodestar amount should be adjusted under the *Johnson* factors, such an adjustment is unnecessary. *See, e.g., Fabela v. City of Farmers Branch, Tex.*, 2013 WL 2655071, at *9 (N.D. Tex. June 13, 2013) (Fitzwater, C.J.) (finding no reason to adjust the lodestar based on the *Johnson* factors where the parties did not argue or offer evidence supporting an adjustment based on the *Johnson* factors).

VI

Hoffman also requests expenses totaling $13,766.25 in connection with the Lévy deposition and the motions to compel.  L&M responds that Hoffman should recover no more than $3,335.44 in costs incurred in connection with the motions to compel, and that the court should award "no fees or costs incurred in preparing for or taking Lévy's Rule 30(b)(6) deposition because such fees and costs could not have been 'caused by' the conduct for which Rule 37 sanctions were granted." D. Br. 25. L&M does not offer any further specific objections to the amount of costs Hoffman seeks.

The court concludes that $13,766.25 constitutes a reasonable amount of expenses. Hoffman has documented these expenses, and, other than broadly objecting to Hoffman's request for expenses, L&M provides no basis for further reducing the requested amount.

- 21 -

EXHIBIT A7
Page 21 of 23

VII

Hoffman requests that, as with other litigants sanctioned in this district under Rule 37, L&M should be ordered to pay the reasonable attorney's fees and expenses awarded as sanctions within no more than 21 days of the court's entry of such an award. L&M does not object to this request. To ensure, however, that L&M is able to preserve its appellate rights, the court will impose a 30-day deadline.

Hoffman also requests prejudgment interest. In her opening brief, she merely makes the request in a parenthetical. In her reply brief, she points to L&M's failure to object to her request for prejudgment interest, and she cites *Dodge v. Hunt Petroleum Corp.*, 174 F.Supp.2d 505, 511-12 (N.D. Tex. 2001) (Lindsay, J.). But *Dodge* does not support her request. In *Dodge* Judge Lindsay awarded prejudgment interest on attorney's fees that the plaintiff had recovered in prosecuting retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a corollary Texas statute. *Dodge*, 174 F.Supp.2d at 507. Hoffman essentially seeks prejudgment interest as a component of a sanction imposed under Rule 37(a)(5) or Rule 37(b)(2)(C). But she has not demonstrated that the court has the authority to order the payment of prejudgment interest in such circumstances. The handful of decisions that the court has located indicate that such an award is not permitted. *See, e.g., Remington Prods., Inc. v. N. Am. Philips, Corp.*, 763 F. Supp. 683, 686 (D. Conn. 1991) ("[T]he Court concludes that its discretion does not include supplementing Rule 37 sanctions with prejudgment interest."). Accordingly, the court declines to award prejudgment interest, either because such an award is not available or in

- 22 -

the exercise of its discretion.[9]

*   *   *

Accordingly, for the reasons explained, the court awards Hoffman the sum of $202,477 in attorney's fees and $13,766.25 in expenses. It is ordered that L&M pay this sum to Hoffman within 30 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

July 1, 2015.

_Sidney A. Fitzwater_ _____

UNITED STATES DISTRICT JUDGE

---

[9]Even under _Dodge_, the running of interest would commence on March 6, 2015, the date the court awarded Hoffman sanctions in an amount to be determined, not on the date Hoffman's attorneys rendered the services. _Dodge_, 174 F.Supp.2d at 511 (awarding prejudgment interest "[b]ecause Plaintiff was entitled to attorney's fees at the time the court entered judgment on the merits").

- 23 -

 **KONING RUBARTS** LLP    Home    About Us    Attorneys    Practice Areas    News    Honors    Contact



Leading Businesses and Professionals Turn to Us
FOR EXPERTISE. FOR TENACITY. FOR RESULTS.
KONING RUBARTS LLP



### Bart Wulff

**Partner**
**Koning Rubarts LLP**

Phone: 214.751.7890
Fax: 214.751.7888
E-mail Mr. Wulff

Print Version
Download vCard

1700 Pacific Ave.    Phone 214.751.7900
Suite 4500           Fax 214.751.7888
Dallas, Texas 75201

Mr. Wulff has more than 35 years' experience as a trial and appellate lawyer. Throughout his career he has specialized in commercial litigation representing clients ranging from Fortune 100 companies with a large and sophisticated in-house legal staff to individuals with substantial business interests to assert or protect.

Mr. Wulff has handled complex litigation matters for major national and international insurance agencies, policyholders, insurance companies, hedge funds, technology distribution companies, transportation companies, financial institutions, agri-business, commodity trading, and motion picture distributing firms, among others.

He currently represents the Marsh & McLennan Companies in a range of E&O and commercial disputes, and acts as personal counsel for policyholders whose claims are being defended by their insurance carrier, but who face exposure to potential excess or otherwise uninsured risks. He recently represented a policyholder in defending against its D&O insurance company's assertion of a late notice defense resulting in a landmark Texas Supreme Court decision requiring prejudice as a prerequisite for a late notice defense in claims made policies. He advises clients on all aspects of risk management.

In the past, he has represented attorneys who have been joined as parties in litigation, Ingram Micro in business disputes arising from its computer product distribution business, defended insurance intermediaries in the three-month trial of a reverse bad faith and insurance agent malpractice case, and represented Alexis, Inc. in the case of Natividad v. Alexis, in which he secured a landmark Texas Supreme Court decision that his client owed no duty of good faith and fair dealing under Texas law. He represented Southwest Airlines in a range of litigated matters over a period of more than 20 years.

**Representative Cases**

**Insurance Cases**

- Represented Consumers County Mutual Insurance Company in securing and sustaining on appeal dismissal of federal class action alleging rate discrimination in non-standard automobile insurance market. *Toni Hollinger, et al. v. Home State County Mutual Insurance Company, et al.,* 654 F.2d 564 (5th Cir. 2011)
- Successful representation of a policyholder in reversing its directors and officers insurance carrier's denial of coverage for securities claims based on late notice and policy exclusions. *XL Specialty Insurance Company v. Financial Industries Corporation,* No. 06-51683, in the Court of Appeals for the Fifth Circuit, 2009 U.S. App. LEXIS 11836 (5th Cir. June 1, 2009). *Financial Industries Corporation v. XL Specialty Ins. Company,* 285 SW 3rd 877 (TX 2009). To view oral argument go to: http://tinyurl.com/b8g89bc

EXHIBIT A8
Page 1 of 2

- Secured and sustained on appeal summary judgment dismissing $66 million professional liability claim against Marsh USA Inc. for 9/11 business interruption damages. *Wyndham Intern. v. Ace American Insurance Co., et al.,* 186 SW 3d 682 (Tex. App. – Dallas 2006, no pet.)
- Secured and sustained on appeal summary judgment for Mercer Human Resource Consulting, Incorporated dismissing multi-million dollar claim for unfair trade practices and tortious interference. *Richardson-Eagle, Inc. v. William M. Mercer Inc.,* 213 S.W. 3d 469 (Tex. App. – Houston [1st Dist.] 2006, pet. denied)
- Secured and sustained on appeal summary judgment in a multi-million dollar insurance agent professional liability claim against Marsh USA Inc. *Estate of Geneva Caraway Hunt v. St. Paul Guardian Ins. Co.,* 2006 Tex. App. LEXIS 3087 (Tex. App. – San Antonio April 19, 2006) (pet. denied)
- Secured complete victory for client in litigation between insurance companies concerning responsibility for aviation collision claim. *Insurance Company of Pennsylvania v. Ranger Insurance Company,* 2004 TX App. LEXIS   4406 (TX. Ct. of Appeals – Dallas May 17, 2004; pet. denied)
- Secured multi-million dollar settlement for policyholder clients in coverage case against D&O carrier. *Active Power, Inc. v. Greenwich Ins. Co.,* No. GN 402225 (53rd Dist. Ct., Travis County, TX)
- Represents the Marsh & McLennan Companies in a range of E&O and commercial disputes
- Representing Marsh & McLennan Companies Inc. and subsidiaries in all Texas litigation involving contingent commissions
- Represents policyholders in coverage disputes with carriers
- Acts as personal counsel for policyholders whose claims are being defended by their insurance carrier subject to a reservation of rights and exposure to excess or uninsured claims
- Defended insurance agency from claims brought by receiver of insurance company seeking to rescind placement of insurance programs for agent's client
- Represented insurance agency in litigation arising from unsuccessful attempt to create new risk transfer mechanism
- Represented insurance agency in dispute over application of co-insurance provisions to business interruption claims arising from Ft. Worth tornado
- Represented insurance agent in litigation alleging failure to properly advise client on adequacy of insurance program to cover sexual harassment exposure
- Assisted insurance agent and independent school district in reversing cancellation of wrap-up insurance program for ongoing school construction program
- Defended multiple insurance agents in litigation by clients asserting failure to properly advise and place coverage for computer errors and omissions coverage
- Represented Alexander & Alexander Inc. in a three-month trial of an reverse bad faith and insurance agent malpractice case
- Represented Alexsis Inc. in the case of Natividad vs. Alexsis, in which he secured a Texas Supreme Court decision that client owed no duty of good faith and fair dealing under Texas law. *Rosa Natividad v. Alexis, Inc., et al.,* 875 SW 2d 695 (Tex. 1994)

For detailed information regarding Mr. Wulff's education, court admissions and activities, click here.

Home | About Us | Attorneys | Practice Areas | News | Honors | Sitemap | Disclaimer | Contact    Copyright © 2016 Koning Rubarts LLP. All rights reserved.

Proudly serving clients in courts throughout Texas, including Dallas, Tarrant, Collin, Denton, Ellis, McLellan, Travis, Harris, Bexar and Smith Counties.
Law Firm Website Design by Law Promo


EXHIBIT $A8$
Page $2$ of $2$

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NENAD M. KOSTIĆ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:10-cv-2265-M |
| | § | |
| TEXAS A&M UNIVERSITY-COMMERCE, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Nenad M. Kostić has filed a Motion for Reasonable Fees and Costs, *see* Dkt. No. 264, which United States District Judge Barbara M. G. Lynn has referred to the undersigned United States magistrate judge for recommendation, *see* Dkt. No. 274.

Defendant Texas A&M University at Commerce ("Defendant") filed a response, *see* Dkt. No. 270, and Plaintiff filed a reply, *see* Dkt. No. 276. Plaintiff also has filed a supplemental motion to seek attorneys' fees incurred after the original motion was filed, *see* Dkt. No. 277, to which Defendant filed a response, *see* Dkt. No. 279, and Plaintiff filed a reply, *see* Dkt. No. 280.

The undersigned now issues the following findings of fact, conclusions of law, and recommendation that Plaintiff's Motion for Reasonable Fees and Costs [Dkt. No. 264, as supplemented by Dkt. No. 277] should be granted in part and denied in part.

-1-

# Background

The parties are familiar with this case's pertinent factual background, which the Court has recounted elsewhere and will only briefly summarize here. *See, e.g.*, Dkt. Nos. 151 & 259.

On December 18, 2014, the jury returned its verdict, finding that Defendant Texas A&M University at Commerce retaliated against Plaintiff for engaging in protected activity under Title VII of the Civil Rights Act of 1964. The jury awarded Plaintiff $300,000 in back pay from the period of December 9, 2010, to the date of the jury's verdict, December 18, 2014. *See* Dkt. No. 241 at 11. The jury declined to award Plaintiff damages for past or future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. The jury also made a non-binding finding that Plaintiff was not entitled to front pay. *See id.* at 8-9.

On August 13, 2015, the Court granted Plaintiff's Motion for Judgment [Dkt. No. 245], awarding Plaintiff prejudgment interest on his back pay award as well as front pay in the amount of $166,229.00, and entered judgment in Plaintiff's favor, taxing costs against Defendant. *See* Dkt. Nos. 259 & 260.

Plaintiff then filed a Federal Rule of Civil Procedure 54(d)(2) motion on September 17, 2015, seeking a postjudgment award of costs, including attorneys' fees under 42 U.S.C. § 2000e-5(k) and costs under 28 U.S.C. § 1920. Between his original motion and supplemental motion, Plaintiff seeks $542,181.25 in attorneys' fees and $62,551.93 in costs, for a total of $604,733.18, plus postjudgment interest. *See* Dkt. Nos. 264 & 277. Defendant objects to the amount of attorneys' fees sought by Plaintiff

-2-

but not to the requested court costs or postjudgment interest. *See* Dkt. Nos. 270 & 279.

The undersigned now concludes that Plaintiff's fee request should be granted in part and denied in part and that, without objection, Plaintiff's request for Section 1920 costs should be granted.

### Legal Standards

In any suit brought pursuant to Title VII of the Civil Rights Act, the Court, in its discretion, may award the prevailing party reasonable attorneys' fees (including expert fees) as part of the costs. *See* 42 U.S.C. § 2000e-5(k). Reasonable attorneys' fees are calculated through a two-step process called the lodestar method. *See Hensley v. Eckerhardt*, 461 U.S. 424, 432 (1983); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995). The lodestar is calculated by multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). When an attorneys' requested hourly "rate is not contested, it is *prima facie* reasonable." *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989).

The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* "It is impermissible, however, to eliminate wholesale the services of attorneys without

EXHIBIT A9
Page 3 of 20

identifying the particular services which are regarded as duplicative." *Tasby v. Estes*, 651 F.2d 287, 289-90 (5th Cir. Unit A July 1981) (internal quotation marks omitted). But "[p]ercentage reductions are appropriate when attorneys impermissibly engage in block billing or fail to exercise billing judgment" – including by failing to write off time spent on work that was redundant and in hindsight may have been unnecessary – or "when a court reduces excessive time spent on particular legal services" or for particular services that are "duplicative." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-752-D, 2011 WL 487754, at *13 (N.D. Tex. Feb. 11, 2011); *Shepherd v. Dallas Cty., Tex.*, No. 3:05-cv-1442-D, 2009 WL 977294, at *2 n.3 (N.D. Tex. Apr. 10, 2009); *accord Cookston v. Freeman, Inc.*, No. 3:98-cv-2106-D, 1999 WL 714760, at *5 (N.D. Tex. Sept. 14, 1999).

The hours remaining are those reasonably expended. *See Watkins*, 7 F.3d at 457. There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light*, 50 F.3d at 324, 329; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).

The undersigned recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, has recently been called

-4-


EXHIBIT A9
Page 4 of 20

into question. *See Perdue*, 559 U.S. at 552-53; *Perez v. Bruister*, Nos. 3:13cv1001-DPJ-FKB & 3:13cv1081-DPJ-FKB, 2015 WL 5712883, at *5-*6 (N.D. Miss. Sept. 29, 2015); *Alex v. KHG of San Antonio, LLC*, No. 5:13-cv-0728 (RCL), ___ F. Supp. 3d ___, 2015 WL 5098327, at *1 (W.D. Tex. Aug. 28, 2015); *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013). But in a recent opinion, the United States Court of Appeals for the Fifth Circuit, without comment or reference to the United States Supreme Court's decision in *Perdue*, continued to utilize the approach laid out above. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502-03 (5th Cir. 2013); *see also Alex*, 2015 WL 5098327, at *1 ("The *Perdue* Court clearly indicated a preference for the lodestar method over the Fifth Circuit's factors, and the Fifth Circuit has subsequently treated the *Johnson* factors as a complement to the lodestar method." (citing *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 n. 17 (5th Cir. 2013); *Black*, 732 F.3d at 502)). *But see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663-64 (5th Cir. 2012) (analyzing whether any changes brought about by *Perdue* apply to bankruptcy attorneys' fees calculations); *but see also In re ASARCO, L.L.C.*, 751 F.3d 291, 296 (5th Cir. 2014) (following *Pilgrim's Pride*).

In *Perdue*, the Supreme Court was ultimately considering the appropriateness of an enhancement of an award of attorneys' fees, and Plaintiff here has not requested such an enhancement. Other factors also distinguish this case from *Perdue*, including the fact that *Perdue* involved a 42 U.S.C. § 1988 claim and the fees were therefore paid by state and local taxpayers. *See Perdue*, 559 U.S. at 558. Moreover, after the lodestar amount is determined, it may not be adjusted due to a *Johnson* factor that was already

EXHIBIT *A9*
Page *5* of *20*

taken into account during the initial calculation of the lodestar, *see Saizan*, 448 F.3d at 800, and the lodestar calculation may take into account several *Johnson* factors, *see Black*, 732 F.3d at 503 n.8; *see also Alex*, 2015 WL 5098327, at *1 ("However, a court may not adjust the award on the basis of any factor already accounted for in calculating the lodestar").

In light of the circumstances in this case – where there is no request for enhancement and no Section 1988 claim – the undersigned will not address whether *Perdue* changed the landscape of calculating attorneys' fees awards in the Fifth Circuit. Rather, the Court should take into account the necessary factors when determining the appropriate amount of attorneys' fees.

## Analysis

Plaintiff seeks a total of $542,181.25 in attorneys' fees and $62,551.93 in costs.

Plaintiff seeks $420,732.00 for work done by his lead counsel, Brian P. Sanford, for 637.28 hours at an hourly billing rate of $650.00 ($414,232.00) for work done prior to the filing of the original motion for fees and 10 hours at an hourly billing rate of $650.00 ($6,500.00) for work done after the original motion was filed. Mr. Sanford has over 29 years of experience, with an emphasis on civil rights employment litigation, and is board certified in both labor and employment law and civil trial law. When he began representing Plaintiff, Mr. Sanford was with the firm of SanfordBethune. He started his own firm, The Sanford Firm, during the pendency of this case. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 1-12 (Declaration of Brian P. Sanford); Dkt. No. 266-3 at 46 (Declaration of David L. Wiley); Dkt. No. 266-3 at 54 (Declaration of Hal K. Gillespie);

-6-

Dkt. N0. 266-3 at 64-65 (Declaration of Rod Tanner); Dkt. No. 277 at 2.

Mr. Sanford declares that he and the associates working with him contemporaneously recorded time and described the work done. He attaches billing records to his declaration to support Plaintiff's request for attorneys' fees and bills of cost, invoices, and other documentation to support the costs incurred by his firms. *See* Dkt. No. 266-1 at 13-14 (Declaration of Brian Sanford); Dkt. No. 266-2 at 1-72.

Plaintiff seeks $98,931.25 for work done by David B. Norris, an associate licensed to practice law in 2011 and former law clerk at The Sanford Firm, for 395.525 hours at an hourly rate of $250.00 ($98,881.25) for work done prior to the filing of the original motion for fees, 0.20 hours at an hourly rate of $250.00 ($50.00) for work done after the original motion was filed, and 11.025 hours of work done at an hourly rate of $100.00 ($1,102.50) as a law clerk before he was licensed to practice law. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 4 (Declaration of Brian Sanford); Dkt. No. 266-3 at 48 (Declaration of David L. Wiley); Dkt. No. 266-3 at 57 (Declaration of Hal K. Gillespie); Dkt. No. 277 at 2.

Plaintiff seeks $4,374.00 for work done by Ashley E. Tremain, an associate at SanfordBethune who was licensed to practice law in 2008, for 19.44 hours of work at an hourly rate of $225.00. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 4 Declaration of Brian Sanford); Dkt. No. 266-3 at 1-4 (Declaration of Ashley E. Tremain); Dkt. No. 266-3 at 48-49 (Declaration of David L. Wiley); Dkt. No. 266-3 at 56-57 (Declaration of Hal K. Gillespie).

Plaintiff seeks $720.00 for work done by Amy E. Gibson of Gibson Wiley PLLC,

EXHIBIT A9
Page 7 of 20

who helped with jury selection, for 1.6 hours of work at an hourly rate of $450.00. Ms. Gibson has almost 20 years legal experience and specializes in employment litigation and jury selection. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 8; Dkt. No. 266-3 at 5-22 (Declaration of Amy Gibson); Dkt. No. 266-3 at 47 (Declaration of David L. Wiley); Dkt. No. 266-3 at 55-56 (Declaration of Hal K. Gillespie); Dkt. No. 266-3 at 66-67 (Declaration of Rod Tanner); Dkt. No. 277.

Plaintiff seeks $2,610.00 for work done by Barry S. Hersh of Hersh Law Firm, P.C., who helped with jury selection and mock trial, for 5.8 hours at an hourly billing rate of $450.00. Mr. Hersh has over 17 years experience, is board certified in labor and employment law, and specializes in employment litigation. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 8; Dkt. No. 266-3 at 23-25 (Declaration of Barry S. Hersh); Dkt. No. 266-3 at 47-48 (Declaration of David L. Wiley); Dkt. No. 266-3 at 55 (Declaration of Hal K. Gillespie); Dkt. No. 277.

Plaintiff seeks $13,711.50 for work done by Robert E. McKnight, Jr., of counsel to the law firm of Marek, Griffin & Knaupp, who helped prepare the motion for fees and costs, for 14.30 hours at an hourly rate of $495.00 ($7,078.50) for work done prior to the filing of original motion and 13.40 hours at an hourly rate of $495.00 ($6,633.00) for work done after the original motion was filed. Mr. McKnight has over 22 years legal experience and specializes in employment litigation, including civil rights claims, and he is the author of "Representing Plaintiffs in Title VII Cases" (Wolters Kluwer, 4th ed. 2014).

Mr. Hersh also has experience handling fee applications and appeals. Mr. Hersh

declared that he made contemporaneous time records and described the work performed, and he attached supporting time entries to his declaration. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 8; Dkt. No. 266-3 at 26-33 (Declaration of Robert E. McKnight, Jr.); Dkt. No. 266-3 at 46-47 (Declaration of David L. Wiley); Dkt. No. 266-3 at 54-55 (Declaration of Hal K. Gillespie); Dkt. No. 266-3 at 65-66 (Declaration of Rod Tanner); Dkt. No. 277.

These amounts do not include reductions taken by Plaintiff's attorneys in an exercise of their billing judgment. *See* Dkt. No. 265 at 4-5. "To determine the number of hours reasonably expended on a case, a plaintiff must show that billing judgment was exercised. Billing judgment is usually shown by the attorney writing off unproductive, excessive, or redundant hours." *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) (citations omitted), *abrograted on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006); *see also Hensley*, 461 U.S. at 434. "If there is no evidence of billing judgment, however, then the proper remedy is not a denial of fees, but a reduction of the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002) (internal quotation marks omitted).

Here, Mr. Sanford explained that he deducted 50% of the time that he and Mr. Norris spent in one-on-one conferencing with Plaintiff and that he also deducted 50% of all travel time in the case. *See* Dkt. No. 265 at 4-5; Dkt. No. 266-1 at 5-6 (Declaration of Brian Sanford). The amount also does not include a voluntary 10% reduction in the total amount of attorneys' fees ($577,627.25) attributable to Mr. Sanford and his two

EXHIBIT A9
Page 9 of 20

associates, Mr. Norris and Ms. Tremaine, as an adjustment for results obtained, which Mr. Sanford made in the exercise of billing judgment. *See* Dkt. No. 265 at 6-7, 15-16; Dkt. No. 266-1 at 97. In response to Defendant's objections, Plaintiff also reduced the amount of fees sought to account for the time to plead claims in the original complaint that were omitted in the First Amended Complaint (.5 hour at Mr. Sanford's $650.00 hourly rate), *see* Dkt. No. 276 at 2 n.2, and for hours incorrectly charged for work that was actually done in the *Lemanski* case (.5 hours at Mr. Sanford's $650.00 hourly rate and 2.5 hours at Mr. Norris's $250.00 hourly rate), *see id.* at 9 n.7, Dkt. No. 277 at 2 n.1 & n.3.

Plaintiff does not seek an enhancement of the resulting lodestar amount based on the *Johnson* factors, explaining that, in Plaintiff's view, "the lodestar fee already captures all of the *Johnson* factors relevant to setting a reasonable fee for this action," with the "only possible exception [being] *Johnson* factor number seven ('the results obtained')," as to which, as noted above, Plaintiff voluntarily imposed a 10% reduction. Dkt. No. 265 at 2 n.7, 14-15.

Defendant does not challenge the hourly rates charged by Plaintiff's attorneys, the costs of court, or postjudgment interest request. And it acknowledges that Mr. Sanford's requested hourly rate is justified by his skill, experience, and accomplishments in the area of employment civil rights. *See* Dkt. No. 270 at 16-17.

But Defendant does challenge the amount involved in Plaintiff's request for attorneys' fees in relation to the results obtained on the single Title VII claim and argues that Plaintiff should not recover attorneys' fees for claims on which he did not

-10-

prevail and urges the Court to disallow recovery for attorneys' fees attributable to those claims and to then, after making reductions for severable, non-prevailing claims, further reduce Plaintiff's fee award to reflect the limited results obtained. *See* Dkt. No. 270 at 4-11. And Defendant asserts that "the award for the plaintiff's supplemental fees and costs should be reduced by the same proportion as the award for fees and costs as a whole." Dkt. No. 279 at 3.

Plaintiff was a tenured professor who was terminated by Defendant. Plaintiff originally sued Defendant, Texas A&M University System, Dan R. Jones, Larry F. Lemanski, Christine Evans, and Ben W.-L. Jang. *See* Dkt. No. 1. He later added Michael McKinney as a defendant. *See* Dkt. No. 40. McKinney was the Chancellor of Texas A&M University System. Jones was Defendant's President and Chief Executive Officer. Lemanski was the Provost and Vice-President of Academic Affairs. Evans was the former Dean of the College of Arts and Sciences and subsequently a professor of agricultural sciences. Jang was the Head of the Chemistry Department and a chemistry professor.

In his original complaint, Plaintiff asserted a Title VII retaliation claim against both Defendant and Texas A&M University System, alleging that they retaliated against him because he opposed discriminatory practices. He asserted claims under 42 U.S.C. §§ 1983 and 1985 and the First and Fourteenth Amendments against all Defendants except McKinney, alleging that they conspired in harassment, leading to his suspension, and in seeking his discharge, harmed his reputation, made false charges against him, and caused Defendant or Texas A&M University System to fail

-11-

to give Plaintiff an opportunity to clear his name and to violate its tenure policy and agreement and other policies and rules. Plaintiff sued Defendant for breach of an employment contract and Jang for tortious interference. Plaintiff sued Lemanski, Evans, and Jang for defamation.

In his Second Amended Complaint, Plaintiff expanded his allegations. He alleged a Title VII retaliation claim against Defendant, alleging that Defendant retaliated against him because he opposed prohibited practices and participated in protected activities. He asserted a Section 1983 First Amendment Claim against the individual defendants, alleging that they violated his rights to free speech and free association and retaliated against him because he exercised his First Amendment rights. He asserted a Section 1983 Property Rights Due Process Claim against McKinney, Jones, and Lemanski in their individual capacities, alleging that they deprived him of continued employment and tenure with due process. He asserted a Section 1983 Liberty Interest Due Process Claim against the individual defendants, alleging that they deprived him of his liberty interest in his reputation without due process. And he alleged a defamation claim against Jones, Lemanski, Evans, and Jang, in their individual capacities, alleging that they repeatedly libeled and slandered him.

In his First Amended Complaint, Plaintiff abandoned his claims against Texas A&M University System and his claims for violations of Section 1985, breach of contract, and tortious interference. *See* Dkt. No. 23. Plaintiff's claims for Section 1983 retaliation, property interest due process, and liberty interest due process and claims against McKinney, Jones, Lemanski, and Evans were dismissed in two summary

EXHIBIT A9
Page 12 of 20

judgment rulings. *See* Dkt. Nos. 100, 105, 151, 162, 163, & 164. And his claim for

defamation against Jang was dismissed at trial. Thus, the only claim that was tried

to the jury was Plaintiff's Title VII retaliation claim against Defendant.

"The Supreme Court has twice made clear that 'the most critical factor' in

determining reasonableness of a fee award in a civil rights suit 'is the degree of success

obtained.'" *Migas v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (quoting

*Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436)). As the

Supreme Court has explained

> Where the plaintiff has failed to prevail on a claim that is distinct in all
> respects from his successful claims, the hours spent on the unsuccessful
> claim should be excluded in considering the amount of a reasonable fee.
> Where a lawsuit consists of related claims, a plaintiff who has won
> substantial relief should not have his attorney's fee reduced simply
> because the district court did not adopt each contention raised. But where
> the plaintiff achieved only limited success, the district court should award
> only that amount of fees that is reasonable in relation to the results
> obtained.

*Hensley*, 461 U.S. at 440. Where a plaintiff's claims "involve a common core of facts or

[are] based on related legal theories," it may be "difficult to divide the hours expended

on a claim-by-claim basis." *Id.* at 435. In that instance, the district court "should focus

on the significance of the overall relief obtained by the plaintiff in relation to the hours

reasonably expended on the litigation." *Id.*

Thus, "[w]hen claims are based on different facts and legal theories, the district

court should treat the claims as separate suits and award attorneys fees only for time

expended on the successful claims. On the other hand, when the claims arise from a

common core of facts and involve related legal theories, the district court should

-13-

attempt to arrive at a reasonable fee award 'either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff.'" *Wyatt v. Cole*, 928 F.2d 718, 724 (5th Cir. 1991) (quoting *Texas State Teachers v. Garland Indep. School Dist.*, 482 U.S. 782, 789 (1989)), *rev'd in unrelated part on other grounds*, 504 U.S. 158 (1992). "When the documentation of hours is inadequate for the court to identify those hours spent on prevailing claims which are separate and distinct from other claims, the district court may reduce the award accordingly." *Von Clark v. Butler*, 916 F.3d 255, 259 (5th Cir. 1990).

Defendant argues that the claims on which Plaintiff lost are severable from the Title VII claim on which he prevailed. Conversely, Plaintiff argues that his unsuccessful claims were not "distinct in all respects" from the successful claim for retaliation. *See Hensley*, 461 U.S. at 440 ("Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of the a reasonable fee."). Instead, Plaintiff argues that all of his claims are related because common to all are the facts that he opposed unlawful conduct, participated in the investigation of that unlawful conduct, and suffered retaliation because of his opposition and participation. *See* Dkt. No. 265 at 6. But Defendant observes that none of those are legally cognizable elements or allegations under Plaintiff's defamation claim or his two due process claims.

Plaintiff also argues that the facts supporting his Title VII claim pervade each

of the other claims and that all of Plaintiff's acts and almost all of his statements that were protected by Title VII were also protected by the First Amendment, specifically his complaints about Defendant promoting a particular religion and his opposition to Defendant's treatment of Dr. Chunki Shi on matters of religion. *See id.* at 6-7. But Defendant asserts that the many of the alleged unlawful acts that Plaintiff claims to have opposed, such as church-state entanglement, plagiarism, and nepotism, were immaterial to his Title VII claim and that most of his alleged acts and statements protected by the First Amendment, such as speaking out on lab safety, were not protected by Title VII.

Plaintiff also argues that the time spent on his due process claim contributed to the success of the Title VII claim because he used the procedural abuses and violations of the law and university policies and procedures as evidence of pretext for Defendant's retaliatory actions. But Defendant asserts that, at trial, most of the discussion of the committee investigations, Plaintiff's suspension, and the appeal committee proceedings dealt with the substantive merits of the charges against Plaintiff and the degree of involvement of Defendant's administrators, and not with allegations concerning procedural irregularities.

And Plaintiff characterizes the defamation claim as the most distinct claim but argues that, because it rested on undisputed evidence (a single memorandum), his counsel spent little time in discovery or trial on it. But Defendant asserts that Plaintiff's counsel devoted considerable time at trial reading excerpts from the memorandum to Plaintiff's character witnesses and asking if they agreed with the

EXHIBIT A9
Page 15 of 20

statements and offered testimony attempting to discredit the memorandum's other signers.

Defendant also argues that the result obtained does not support the amount of attorneys' fees sought. At trial, Plaintiff told the jury that he sought "not more than $3.1 million nor less than $1.3 million" in damages. The jury awarded only $300,00.00 for back pay. The Court added $70,198.80 in prejudgment interest on that amount, plus $166,229 for two years of front pay, for a total recovery of $536,427.80 plus postjudgment interest. But those amounts were significantly less than the damages that Plaintiff sought – although Plaintiff explains that "[t]he demand for at least $1.3 million in damages included the still-live defamation claim" and contends that, "[o]n the Title VII claim alone, a total recovery of over $500,000 is a substantial success." Dkt. No. 276 at 10.

Defendant quantifies the percentage of the claims, paragraphs of factual allegations, and discovery efforts for the unsuccessful claims. But there is no precise rule or formula for determining whether counsel's time was reasonable in relation to the success achieved, and a request for attorneys' fees should not result in a second major litigation. *See Hensley*, 461 U.S. at 436-37. "The essential goal ... is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 2216 (2011).

The undersigned finds that the amount of fees sought is not reasonable in relation to the results obtained on Plaintiff's Title VII retaliation claim and insofar as

EXHIBIT A9
Page 16 of 20

it includes attorneys' fees that would have been expended solely on claims on which Plaintiff did not prevail. Plaintiff voluntarily reduced his attorneys' fees request by 10% to account for the results obtained. The undersigned recommends that the amount of attorneys' fees be further reduced by 20% to account for time spent related solely to claims on which Plaintiff did not prevail and which claims, including Plaintiff's First Amendment and defamation claims, were in large part separate and distinct from Plaintiff's Title VII retaliation claim and to account for Plaintiff's relative level of success on his Title VII retaliation claim, as to which he sought considerably more in front and back pay and damages than either the jury or the Court has awarded him.

Defendant also asserts that the amount of Plaintiff's attorneys' fees request should be further reduced for additional reasons.

First, Defendant argues that Plaintiff's vexatious litigation strategy unreasonably inflated the lawsuit, including the amount of attorneys' fees, and that, if Plaintiff had brought only a Title VII claim against Defendants, the amount of fees would have been significantly less. *See* Dkt. No. 270 at 3-4.

Second, Defendant argues that the award should be reduced for abusive discovery, including Plaintiff's needlessly prolonged deposition testimony and oppressive and unnecessary demands for production of documents. *See id.* at 11-12.

Third, Defendant argues that the attorneys' fees request should be reduced for unjustified excess and duplication, citing a few specific examples. *See id.* at 12-15. "If a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries

-17-


EXHIBIT A9
Page 17 of 20

or block billing. It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention." *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015). Here, Defendant complains about multiple attorneys billing on the same matter and, specifically, about 12.7 combined hours by Mr. Sanford and Ms. Tremain on the First Amended Complaint, 60.4 combined hours by Mr. Sanford and Mr. Norris on five depositions, and 7.7 hours for Mr. Norris to wait for the verdict. Defendant also argues that the attorneys' fees should be reduced for indistinct billing entries and argues that some of the entries are expressed in very broad terms and not differentiated by subject.

But, as explained above, the Court should, in addition to Plaintiff's own voluntary 10% reduction and reductions made in an exercise of counsel's billing judgment, reduce the requested award by an additional 20%. The undersigned concludes that percentage reductions of this magnitude are sufficient to account for any time entries that are duplicative, excessive, or vaguely recorded and already account for a reduction of fees for Plaintiffs' bringing, and his counsel spending time on, claims other than the Title VII retaliation claim that alone went to the jury. *Accord* Dkt. No. 270 at 11 ("The discussion below may either result in deductions in addition to, or serve as further grounds for (if already included within), the reductions discussed above."); *Hoffman*, 2015 WL 3999171, at *5 ("And as the court explains below, it is applying a 20% threshold reduction, followed by a 30% reduction for block billing and 10% billing judgment reduction to the 721.7 hours for which Hoffman is seeking compensation. L & M has failed to show that percentage reductions of this magnitude

-18-



EXHIBIT A9
Page 18 of 20

are insufficient to account for any time entries that are duplicative, excessive, or vaguely recorded.").

Further, the undersigned, who ruled on some of the discovery disputes in this case, does not find any basis in this record to further reduce Plaintiff's requested fee award on the basis of Defendant's continuing complaints about discovery matters or litigation strategy. *See, e.g.*, Dkt. No. 137 (rejecting many of Defendants' objections to Plaintiff's renewed motion to compel and ordering that Defendants must produce or provide Plaintiff any existing documents in their possession, custody, or control that are responsive to 16 discovery requests); *see also* Dkt. No. 151 at 11 (observing that "filing a motion to strike out of apparent spite over discovery disputes is not an appropriate reason to limit Plaintiff's response to the renewed summary judgment motion").

Accordingly, the undersigned recommends that the Court award Plaintiff his reasonable attorneys' fees in the total amount of $433,745.00 (80% of his total requested attorneys' fees of $542,181.25).

## Recommendation

The Court should grant in part and deny in part Plaintiff's Opposed Motion for Reasonable Fees and Costs [Dkt. No. 264, as supplemented by Dkt. No. 277] and award Plaintiff Nenad M. Kostić $433,745.00 in reasonable attorneys' fees under 42 U.S.C. § 2000e-5(k) and $62,551.93 in costs under 28 U.S.C. § 1920, plus postjudgment interest on this award of fees and costs from August 13, 2015, the date on which the Judgment was entered.

EXHIBIT A9

Page 19 of 20

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 28, 2015



_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

EXHIBIT A9
Page 20 of 20

HOME          EMPLOYMENT LAW          ATTORNEY PROFILE          CONTACT US

*972-372-9200*

"The price of freedom is eternal vigilance."

– Thomas Jefferson

"Ju
wr(



## Dallas Texas Employment Lawyer

### Wisdom – Courage – Justice

Brian Sanford has been a trial lawyer for over 25 years in and out of the state of Texas. He primarily practices employment law. Although, he has handled a wide variety of civil cases, including physical injury and business claims.

The courtroom can be a frightening place with many pitfalls. This causes many people to fear or lose confidence in the justice system.

Sanford believes that the courthouse, when operating properly, is a honorable place ordained to do good things for people with just causes. A court provides a remedy to those harmed by a violation of the law. Providing this remedy is the measure of a civilized society.

A jury, as a committee of persons from the community, acts as the conscience of the community to protect the community.

The law allows attorneys, such as Sanford, to act as a private attorney general in employment civil rights cases to pursue wrongs and protect the public from future violations.

Everyone deserves protection from harmful violations and to have a qualified person standing up for him or her in the courtroom.

### Overview of Practice Areas

- Employment law
- Harassment
- Wrongful Termination
- Personal Injury

Dallas Attorney Brian Sanford practices a wide variety of law including civil trial law, labor and employment and personal injury. If you have questions about a matter that you do not see listed, please call during business hours.

### Contact Us

*Denotes required field*

* Name

* Email

* Phone

City

State

Please explain your legal situation.

Submit

### Helpful Links

- Sanford Firm
- Texas Employment Lawyers Association
- National Employment Lawyers Association
- DFW-NELA
- U.S. Department of Labor
- Equal Employment Opportunity Commission
- Occupational Safety and Health Administration
- Texas Workforce Commission

EXHIBIT *A10*
Page *1* of *1*
3/3/2016

# Robert E. McKnight, Jr. (OF COUNSEL)

# MAREK, GRIFFIN & KNAUPP
## ATTORNEYS AT LAW
### GET THE CERTIFIED ADVANTAGE.®



**Robert E. McKnight, Jr.,** is of counsel to Marek, Griffin & Knaupp. He practices in the areas of labor and employment law (including employee rights and benefits, ERISA, wage and hour, and civil rights in employment) and civil rights in housing. He is also the publisher and editor of Fifth Circuit Civil News, a monthly publication reporting on civil opinions issued by the U.S. Fifth Circuit Court of Appeals, and Fifth Circuit Civil News Daily Update, a daily email supplement to the monthly publication. He is a member of the National Employment Lawyers Association and the Texas Employment Lawyers Association.

Mr. McKnight graduated from Loyola University (New Orleans) with a J.D. and an M.A. (religious studies) after completing a joint-degree program.

**Bar Admissions**
State Bar of Texas (2006)
State Bar of Louisiana (1993)
United States Court of Appeals, Fifth Circuit (1993)
United States District Courts, Southern (2006), Western (2008) and Eastern (2009) Districts of Texas
United States District Courts, Eastern (1993), Middle (1997) and Western (1997) Districts of Louisiana
U.S. Air Force Court of Criminal Appeals (1999)
Court of Appeals for the Armed Forces (1999)

Marek, Griffin & Knaupp
203 N. Liberty Street
**Victoria, Texas** 77901
Telephone: (361) 573-5500
Fax: (361) 573-5040

Marek, Griffin & Knaupp
225 North Virginia, Suite 1
**Port Lavaca, Texas** 77979
Telephone:(361) 552-5050
Fax: (361) 552-5522

E-Mail: <u>Robert E. McKnight, Jr.</u>

EXHIBIT A1l
Page 1 of 1
3/3/2016